SCOTT, RECEIVER *v.* AMSLER ET AL.

[No. 15,477. Filed March 29, 1938.]

132

*Halleck & Halleck* and *Emmet M. La Rue,* for appellant.

*Reidelbach & Spangler,* for appellees.

CURTIS, J.—This action was brought by the appellant George W. Scott, as Receiver of The Trust and Savings Bank of Rensselaer, Indiana, against the appellee, Floyd Amsler, on a promissory note, executed by said Floyd Amsler to The Trust and Savings Bank of Rensselaer, in payment of an alleged voluntary contribution by said Amsler of sixty per cent of his stockholders' liability as a stockholder of The First National Bank of Rensselaer, Indiana. The First National Bank of Rensselaer, Indiana, had transferred all its assets to said The Trust and Savings Bank, pursuant to certain contracts between said The First National Bank and said The Trust and Savings Bank, in order to liquidate said The First National Bank, and whereby said The Trust and Savings Bank assumed all the liabilities of said The First National Bank to its depositors, and agreed to accept said assets and all such voluntary contributions in full discharge of the individual stockholders' liability and as their entire proportionate share of said indebtedness, and to release such individual stockholder from any further payment on account of said indebtedness, and agreed that all stockholders of The First National Bank of Rensselaer, who voluntarily contribute on account of

their statutory liability, as hereinabove provided, in cash, or by note or notes, on or before October 15, 1931, shall be relieved from the payment of any interest charges on the balance of the indebtedness, if there should be any balance remaining unpaid by reason of the refusal of certain of said solvent stockholders to pay their sixty per cent of their statutory liability and in the event a receiver be appointed for said The First National Bank, and an assessment is made by said receiver and the comptroller of the currency, or either of them, against all of the stockholders of said national bank, by reason of said indebtedness said The Trust and Savings Bank agreed to accept the sixty per cent of the statutory liability of each individual stockholder as shall have voluntarily made their contribution in full settlement of said individual liability to said The Trust and Savings Bank, and further agreed, that in the event the full amount of said indebtedness was not realized by such voluntary contributions, and suit is entered against the stockholders of said national bank by said trust and savings bank and judgments rendered against such stockholders, then said trust and savings bank agreed to accept in full discharge of said judgments as against those who have voluntarily contributed their proportionate part of said indebtedness, the amount voluntarily contributed by each of said stockholders.

Said appellant also sought, in said action, to set aside, as fraudulent, a certain deed and chattel mortgage executed by said Floyd Amsler, to his co-appellee, Mary J. Carpenter.

The complaint was in one paragraph, to which the appellees filed their separate answers in general denial. The appellee Amsler also filed second, third, fourth, fifth, and sixth paragraphs of answer, to each of which general denials were filed. The cause was then submitted to the court for trial, who, upon proper request,

made a special finding of facts and stated its conclusion of law thereon. The conclusions of law were as follows: "1st. That the note in suit was given without legal authority. 2nd. That the plaintiff take nothing by the complaint; and 3rd. That defendants recover their costs, to each of which conclusions of law the appellant excepted."

The judgment followed the conclusions of law. The appellant filed a motion for a new trial which was overruled and this appeal prayed and perfected. The errors assigned are that: "1. The court erred in its first conclusion of law. 2. The court erred in its second conclusion of law. 3. The court erred in its third conclusion of law. 4. The court erred in overruling appellant's motion for a new trial."

It is the contention of the appellees that no question can be presented under the fourth error assigned, "that the court erred in overruling appellant's motion for a new trial," for the reason that the record shows that the court made and filed its special finding of facts on the 20th day of April, 1934, and that the motion for a new trial was not filed until 55 days thereafter, to wit: on June 14, 1934. These facts are not disputed, but the appellant asserts that his action was timely. As a basis for this assertion, he points out that while the finding of facts was made and filed on April 20th, 1934, the conclusions of law were not stated until May 18, 1934, and that his motion for a new trial came within the 30-day statutory period after the conclusions of law were stated. The appellees are correct in their contention and no question is presented under the motion for a new trial. The statute requires generally that the application for a new trial may be made at any time within 30 days from the time when the

decision is rendered. Sec. 2-2403 Burns 1933, §370 Baldwin's 1934.

The appellant does not contend that he comes within any of the exceptions contained in the above statute, but he contends in effect that in the instant case the trial court cast certain findings of fact among the conclusions of law and for that reason the running of the 30-day statute would count from the date the conclusions of law were stated. This position of the appellant is untenable under our statute and the decisions. If findings of fact are cast among conclusions of law, they will be disregarded, but that does not assist the appellant in his position. The words "finding" and "decision" have been held to be synonymous and the word "finding" has by a long line of decisions been held to include a special finding of facts. This has been the rule in Indiana from the very early decisions and whether the rule is logical or illogical as applied to a special finding of facts (especially when the conclusions of law are stated at a later date), this court is bound by it. *Dodge* v. *Pope* (1884), 93 Ind. 480, and the cases cited therein; *Peoples State Bank* v. *Buchanan* (1927), 86 Ind. App. 517, 145 N. E. 898; *Wolverton* v. *Wolverton* (1904), 163 Ind. 26, 69 N. E. 458.

The remaining questions arise upon the assignments that the court erred in each of the conclusions of law heretofore set out.

The correctness of the finding of facts, as the record comes to us, is unchallenged. The finding shows that the appellee Amsler at all times mentioned herein owned 20 shares of the capital stock of The First National Bank of Rensselaer, Indiana, of the par value of $100.00 per share; that that bank on or before the 20th day of February, 1926, acting through its board of directors, determined to liquidate its business and to retire from the banking business; that on that date it entered into

a contract with The Trust & Savings Bank of Rensselaer by which it transferred certain of its assets to that bank, the latter bank as one of the salient features of said contract agreeing to assume all liability for all deposits of the former bank; that the notes which were thus disposed of by said first bank to the second bank were to be fully endorsed by the first bank. The first bank also agreed to proceed at once under the rules of the comptroller of the currency and the chief bank examiner to liquidate its remaining assets and settle up its business as early as would be consistent with good business judgment in which liquidation the second bank was to assist, both banks using the same building. The contract provided for a complete settlement under the contract not later than March 1, 1926, and the first bank was to furnish certain collateral security by way of notes and securities as an additional indemnity to the second bank. The court found that both banks complied with the contract and carried out its terms and that by reason thereof, the first bank, on account of the endorsements of the said notes and by reason of said contract, became indebted to the second bank as of September 1, 1931, in the sum of $69,833.62 and that at that time the said first bank had assets in the approximate sum of $9,833.62 with which to pay said indebtedness. The further finding is: "That on the said first day of September, 1931, the First National Bank of Rensselaer and The Trust and Savings Bank of Rensselaer, by and through their respective boards of directors, made and entered into a written agreement whereby the First National Bank of Rensselaer agreed to solicit voluntary contributions from stockholders in the liquidation of said indebtedness, and that said written agreement so entered into is in the words and figures following, to wit:

## " 'CONTRACT

" 'This contract entered into this 1st day of September, 1931, by and between the First National Bank of Rensselaer, Indiana, hereinafter called the party of the first part, and The Trust and Savings Bank of Rensselaer, Indiana, hereinafter called the party of the second part.

" 'Witnesseth, That, Whereas the first party is now indebted to the second party in the sum of $69,833.62 dollars, and

" 'Whereas the assets of the First National Bank at this time are of the approximate value of $9,833.62 dollars, and that in order to fully discharge said indebtedness it will become necessary for the solvent stockholders of said first party to contribute an amount equal to the difference between the value of the assets of said first party and the amount of said indebtedness, and

" 'Whereas both parties are desirous that said indebtedness be fully liquidated and paid, it is therefore agreed as follows:

" 'First. That said first party agrees to solicit, with the aid of the second party, voluntary contributions from each of the solvent stockholders of the first party in an amount equal to sixty per cent of their statutory liability, and in consideration of the fact that some time will be necessary to secure such voluntary contributions, said second party agrees that the date of settlement of such voluntary contributions shall be October 15, 1931, and that said voluntary contributions are to be made either in cash or by approved note or notes payable to the second party, said notes to be payable at such times as the parties thereto shall agree, with interest at the rate of seven per cent per annum until maturity, and eight per cent per annum after maturity until paid and attorney's fees.

" 'Second. That said first party agrees to transfer all

of its present assets to the second party to be applied upon the indebtedness of the first party, and the second party will accept said assets and all such voluntary contributions as hereinabove mentioned, in full discharge of the individual stockholder's liability to the second party, as his entire proportionate share of said indebtedness by reason of his statutory liability, and release such individual stockholders from any further payment on account of said indebtedness.

" 'Third. It is further agreed that all cash contributions made by any of said solvent stockholders, and all notes executed and approved, shall be delivered to A. R. Kresler to be held in trust for the benefit of the second party, and said trust fund shall be delivered to the second party, at its option, and when delivered shall be applied upon the present existing indebtedness of the first party. It is further understood and agreed that all cash contributions shall be deposited by said trustee with the second party.

" 'Fourth. It is further agreed that all stockholders of the first party who voluntarily contribute on account of their statutory liability as hereinabove provided, in cash, or by note or notes, on or before October 15th, 1931, shall be relieved from the payment of any interest charges on the balance of said indebtedness, if there should be any balance remaining unpaid by reason of the refusal of certain of said solvent stockholders to pay their sixty per cent of their statutory liability.

" 'Fifth. It is further agreed that in the event a Receiver is appointed for said first party, and an assessment is made by said Receiver and the comptroller of the currency or either of them against all of the stockholders of the first party by reason of said indebtedness, that the second party agrees to accept the sixty per cent of the statutory liability of each individual stockholder as shall have voluntarily made their contribution

as hereinabove provided, in full settlement of said individual's liability to said second party.

" 'Sixth. It is further agreed that in the event that the full amount of said indebtedness is not realized by voluntary contributions as hereinabove provided, and suit is entered against the stockholders of the first party by the second party and judgments are obtained against said stockholder, then and in the event the said second party agrees to accept in full discharge of said judgments as against those who voluntarily contributed by each of said stockholders.' "

It is further found that the appellee Amsler on the 15th day of October, 1931, signed and delivered to The Trust and Savings Bank of Rensselaer the note sued upon. The note is in the usual form for a promissory note and need not be set out in full in this opinion. At the time Amsler signed and delivered the note, he was informed by the officers of The First National Bank of Rensselaer that said bank was indebted to said second bank and that he, as a stockholder therein, was liable to an assessment against his stock to make assets to pay said indebtedness and that in pursuance of that information, he executed and delivered said note as aforesaid. The court found that there was no other consideration for said note save and except the said 60% liability as a stockholder aforesaid in the first bank and that said note was given in payment of said liability and "for no other consideration whatever." There were other findings in respect to the alleged fraudulent transfers of property from Amsler to his co-appellee Carpenter, but from the view we take of the case, it will not be necessary to pursue these further than to say that the court found that at the time of said transfers, he had an insufficient amount of property to pay his just debts and that he then owed his said co-appellee approximately the sum of $8,000.00. The

court also found as follows: "That the only outstanding indebtedness of The First National Bank of Rensselaer, Indiana, incurred by it prior to the time that it went into voluntary liquidation, and after the contract entered into by it with The Trust and Savings Bank as found in fact number four, was the indebtedness to the said Trust and Savings Bank, created under and pursuant to said contract." We have previously spoken of the contract referred to in this last fact found.

By the fifth paragraph of the contract between said banks dated September 1, 1931, heretofore set out, both the parties to said contract had in mind and attempted to take care of the situation that would be created, if later, there would be a receiver appointed for the first bank and said receiver and the comptroller of the currency, or either of them, would make an assessment against the stockholders of the first bank for their stockholders' liability. By the briefs of both the appellant and the appellees we are informed that a receiver was appointed for said first bank in November, 1932, by the comptroller of the currency, but that at the time of this litigation in the trial court no assessments for stockholders' liability had yet been made. From a reading of the authorities, we are convinced that there is a difference between the method of enforcing the individual liability of the shareholders of a National Bank for the obligations of the bank in the case of involuntary liquidations and voluntary liquidations. See: *First National Bank of Boston* v. *Nichols et al.* (1936), (Mass.) 200 N. E. 869; *Richmond* v. *Irons* (1887), 121 U. S. 27, 7 S. Ct. 788, 30 L. Ed. 864; *McDonald* v. *Thompson* (1902), 184 U. S. 71, 22 S. Ct. 297, 47 L. Ed. 437. We quote from the *First National Bank of Boston* v. *Nichols et al., supra,* as follows (p. 873): "There is a difference between the method of enforcing the individual liability of shareholders of a na-

tional banking association for its obligations in the case of involuntary liquidation and that in case of voluntary liquidation. (Here follows the cases above cited.) In the case of involuntary liquidation no cause of action arises until the assessment is made by the comptroller and so far as concerns the need and amount his findings are conclusive. *Forrest* v. *Jack* (1935), 294 U. S. 158, 162, 55 S. Ct. 370, 79 L. Ed. 829, 96 A. L. R. 1457. On the other hand no such assessment is required in the case of voluntary liquidation but 'when any national banking association shall have gone into liquidation under the provisions of Section 5220 of the Revised Statutes the individual liability of the shareholders provided for by Section 5151 of said statutes may be enforced by any creditor of such association by a bill in equity in the nature of a creditor's bill brought by such creditor on behalf of himself and of all other creditors of the association against the shareholders thereof' in the United States District Court."

In the instant case neither of the above two mentioned methods have been pursued. No bill in equity by a creditor has been filed purporting to be brought by such creditor for' himself and all other creditors, nor has the comptroller of the currency, upon whom falls the authority by statute to make an assessment in case of involuntary liquidation, made such an assessment since the receiver was appointed in November, 1932. The appellee Amsler does not contend that he is not liable for a stockholder's assessment for the payment of the debts of the said first bank, but he does contend that the said first bank after it had been in liquidation for five years had no authority and power to make the agreement of September 1, 1931, by virtue of which said agreement the note herein was executed; that neither of said banks had the power or authority to make the said agreement and that the agreement

purported to have been made by the second bank as contained in said contract whereby it released certain stockholders in the first bank from paying more than 60% of their stockholders' liability was illegal and without consideration and void, and that it had no power to carry out said agreement. We agree with the contention of the appellees in this respect. It is true that the individual liability of the stockholders of the first bank is for all of the contracts, debts and agreements of such bank, but this means that they are liable only for such debts as said bank has made in the ordinary course of its business. We believe that the directors of the first bank were outside of their authority as were also the directors of the second bank in making the contract of September 1, 1931, and that the second bank especially had no power or authority to release such stockholders of the first bank from their stockholders' liability in case they would comply with the 60% provision of the contract. As we view it, the stockholders of the first bank are still subject to an assessment by the comptroller of currency for such amount of their stockholders' liability as he may deem necessary, even to the extent of a one hundred per cent assessment. This we believe is now and has been the situation since said first bank was placed in the hands of a receiver in November, 1932. It thus becomes apparent that the pretended obligation of the second bank to release said stockholders upon the payment of 60% of their stockholders' liability was entirely beyond the power and authority of said second bank and there was, therefore, no consideration for the note which the appellee Amsler executed and which was sued upon in the instant case. It is to be remembered that by the eighth item of the finding of facts, which is unchallenged, the court found that the only consideration for said note sued upon was that it "was given to The Trust and Savings Bank of Rensse-

laer, Indiana, in payment of defendant's stockholder's liability upon the stock held by defendant in the First National Bank of Rensselaer, Indiana, and for no other consideration whatever."

In view of the conclusion above reached, it becomes unnecessary to consider or discuss the alleged fraudulent transfer of property.

In our opinion the trial court did not err in its conclusions of law. Judgment affirmed.