

**FILED**
Mar 02 2015, 9:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT BALL
MEMORIAL HOSPITAL

Edward L. Murphy, Jr.
William A. Ramsey
Murphy Ice LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE L. GAIL
FAIR

Laura J. Conyers
Findling Park & Associates, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES IZZET
YAZGAN, M.D., AND MERIDIAN
SERVICES CORPORATION

Michael D. Conner
Spitzer Herriman Stephenson Holderead
Conner & Persinger, LLP
Marion, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS
ASSOCIATION

Jerry Garau
Garau Germano Hanley & Pennington, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ball Memorial Hospital, Inc.,

*Appellant-Defendant,*

v.

L. Gail Fair, as Personal
Representative of the Estate of
Suwanna Dickey, Deceased,

March 2, 2015

Court of Appeals Cause No.
18A02-1405-CT-316

Interlocutory Appeal from the
Delaware Circuit Court

The Honorable Marianne L.
Vorhees, Judge

Cause No. 18C01-1001-CT-2

*Appellee-Plaintiff,*

v.

Izzet Yazgan, M.D., and
Meridian Services Corporation,
*Appellees-Defendants.*

**Bradford, Judge.**

# Case Summary

Suwanna Dickey was receiving treatment for mental health issues when she became acutely psychotic and was admitted to Appellant-Defendant Ball Memorial Hospital. While at Ball Memorial, Appellees-Defendants Dr. Izzet Yazgan and Meridian Services Corporation provided medical care and psychological services to Dickey. Initially, Dr. Yazgan prescribed Dickey Geodon and later switched to risperidone (a/k/a Risperdal). At approximately 12:30 p.m. on April 12, 2008, Dickey died.

In September of 2009, Appellee-Plaintiff L. Gail Fair, as personal representative of Dickey's estate, filed a proposed complaint with the Indiana Department of Insurance. The proposed complaint named Ball Memorial, Dr. Yazgan, Meridian Services, and others as defendants. The proposed complaint alleged that Ball Memorial's, Dr. Yazgan's, and Meridian Services' treatment of Dickey fell below the applicable standard of care. A medical review panel ("the

Panel") evaluated the evidence and arguments of the parties and unanimously decided that none of the defendants named in the proposed complaint breached the standard of care.

[3]  In January of 2010, Fair filed her complaint in Delaware Circuit Court. (Appellant's App. 7). All defendants filed motions for summary judgment, and in response, Fair designated an affidavit from Dr. Celestine M. DeTrana, who offered opinions criticizing Ball Memorial pharmacists. Fair also deposed Dr. Yazgan, whose testimony arguably suggested that Ball Memorial's pharmacist breached the standard of care. Afterwards, Dr. DeTrana was deposed and testified that the pharmacist breached the standard of care.

[4]  Ball Memorial moved for summary judgment, contending that Fair should not be able to pursue a medical malpractice claim against its pharmacist because such a claim was not made to the panel. Fair responded, contending that her failure to mention the pharmacist before the Panel should not preclude her from making the argument now. Dr. Yazgan and Meridian Services argued that, even if Fair is prevented from making a claim regarding the pharmacist, they should be able to raise such a claim as a defense. The trial court ruled that Fair would be able to pursue a claim against Ball Memorial's pharmacist, and Ball Memorial now appeals. Because we conclude that (1) Fair may pursue a medical malpractice claim against the pharmacist, (2) Dr. Yazgan and Meridian Services may raise the pharmacist's alleged negligence as a defense, and (3) Ball Memorial's claim that its liability is limited to vicarious liability for the possible

negligence of Dr. Yazgan and Meridian Services is not ripe for adjudication, we affirm.

# Facts and Procedural History

[5] In April of 2008, Dickey was receiving treatment for mental health issues when she became acutely psychotic. On April 4, 2008, Dickey's family brought her to the Ball Memorial emergency department. (Appellant's App. 141). While Dickey was at Ball Memorial, contractors Dr. Yazgan and Meridian Services provided medical care and psychological services to her. (Appellant's App. 167, 189-97). Records indicate that Dickey was given 20 mg of Geodon in the emergency room. (Appellant's App. 142). In the morning on April 6, 2008, Dr. Yazgan issued a new order for a maintenance dose of 80 mg of Geodon twice per day. (Appellant's App. 145). Dickey was admitted to Ball Memorial's psychiatric unit on April 6, 2008. (Appellant's App. 52). On April 9, 2008, Dr. Yazgan discontinued Geodon and prescribed Dickey 3 mg of risperidone to be taken twice a day. (Appellant's App. 150. At 3:24 a.m. on April 11, 2008, Dickey vomited. (Appellant's App. 152). Dickey vomited again at 12:27 p.m. (Appellant's App. 152). After seeing Dickey at approximately 1:00 p.m., Dr. Yazgan indicated that she should take 6 mg of risperidone at bedtime. (Appellant's App. 153).

[6] On the morning of April 12, 2008, Dickey "vomited [a] moderate amount [of] brown liquid" and was given a small amount of Gatorade. Appellant's App. p. 154. Dickey's scheduled morning medications were not given due to her

nausea. (Appellant's App. 154-55). Dickey was wakened for lunch, ate some gelatin, and drank some apple juice. (Appellant's App. 155). Although the details differ somewhat in the different accounts, Dickey began vomiting profusely around midday and soon suffered respiratory arrest. Attempts to resuscitate Dickey were unsuccessful, and the time of death was listed as 1:23 p.m., April 12, 2008. (Appellant's App. 155-56). An autopsy determined that the primary cause of death was cardiac arrhythmia related to dehydration, which dehydration was possibly related to vomiting or inadequate fluid intake. (Appellant's App. 158).

On September 23, 2009, Fair, as personal representative of Dickey's estate, filed a proposed complaint with the Indiana Department of Insurance. (Appellant's App. 75). The proposed complaint named Ball Memorial, Dr. Yazgan, Meridian Services, and others as defendants. The proposed complaint alleged, in part, as follows:

> 12. On and after April 6, 2008, Izzet Yazgan, M.D. and Meridian Services Corp. undertook the responsibility to provide counseling, medical and/or psychiatric services to Suwanna.
> 13. The actions of Izzet Yazgan, M.D. and Meridian Services Corp. fell below the standard of care with regard to the treatment provided to Suwanna in that they:
>> a. Failed to properly evaluate, diagnose and treat Suwanna;
>> b. Failed to properly advise Suwanna with regard to her diagnosis and condition; and
>> c. Failed to properly monitor and supervise Suwanna while under their care.

14. On and after April 6, 2008, Ball Memorial Hospital, Inc. … undertook the responsibility to provide counseling, medical and/or psychiatric services to Suwanna.

15. The actions of Ball Memorial Hospital, Inc. … fell below the standard of care with regard to the treatment provided to Suwanna in that [it]:

    a. Failed to properly evaluate, diagnose and treat Suwanna;

    b. Failed to properly advise Suwanna with regard to her diagnosis and condition;

    c. Failed to properly monitor and supervise Suwanna while under their care;

    d. The nurses and staff failed to properly administer medications and [monitor] the effects of the medication; and

    e. The nurses and staff failed to properly assess, monitor and keep physicians advised of Suwanna's condition.

16. On April 12, 2008, Suwanna died as a direct and proximate result of the conduct of the Defendants.

[8]    Appellant's App. pp. 77-78. Fair's submission to the Panel included, *inter alia*, a detailed statement of facts regarding Dickey's final days and specific allegations of negligence by various defendants. Fair alleged that Dr. Yazgan breached the standard of care by (1) prescribing the maximum therapeutic dose of Geodon without adequate investigation of prior medication history or known counterindications; (2) increasing the risperidone dosage too rapidly; (3) failing to realize that Dickey was likely suffering from nausea as a side-effect of her intake of Geodon and/or risperidone, and (4) failing to diagnose or treat Dickey's underlying depression. (Appellant's App. 160-61).

[9] Fair alleged that other Meridian Services nurses breached the standard of care by (1) erroneously giving Dickey 80 mg of Geodon on April 8, 2008; (2) administering excessive dosages of risperidone without clarification of the medication orders and failing to appreciate that Dickey's symptoms were caused be the excessive dosages; (3) failing to adequately perform an abdominal assessment on Dickey or check for dehydration; (4) failing to report abnormal laboratory results; and (5) perhaps not starting resuscitation efforts soon enough. (Appellant's App. 160-64). Fair requested that the Panel render the opinion that "defendant, Ball Memorial Hospital, by and through its agents and/or employees, failed to comply with the applicable standards of care as charged in the plaintiff's proposed complaint [and that] such malpractice was a factor in the damages suffered by Suwanna Dickey." Appellant's App. pp. 164-65. The Panel evaluated the evidence and arguments of the parties and rendered the unanimous opinion in May of 2012 that none of the proposed defendants breached the standard of care.

[10] Meanwhile, in January of 2010, Fair filed her complaint in Delaware Circuit Court. (Appellant's App. 7). Following the determination of the Panel, various defendants filed motions for summary judgment. (Appellant's App. 18). As part of her response, Fair obtained and designated a September 9, 2012, affidavit from Dr. Celestine M. DeTrana, who offered opinions that the defendants breached the applicable standard of care. (Appellant's App. pp. 86-88).

[11] Fair deposed Dr. Yazgan on November 27, 2012. Dr. Yazgan testified that neither Ball Memorial's pharmacist nor any other member of the pharmaceutical staff contacted him to clarify his medication order for Dickey. (Appellant's App. 234-35). On March 11, 2013, the trial court scheduled the matter for trial, to begin on June 16, 2014. (Appellant's App. 25). On April 10, 2013, Fair deposed Registered Nurse Ina Dick, who explained how the pharmacy handled Dickey's risperidone prescription. (Appellant's App. 263-64). Dr. DeTrana was deposed on May 14, 2013. Dr. DeTrana opined that the Ball Memorial pharmacist breached the standard of care in Dickey's case for failing to clarify what Dr. DeTrana believed to be inappropriate dosages of Geodon and risperidone. Appellant's App. p. 130.

[12] On December 31, 2013, Ball Memorial moved for summary judgment and, alternatively, partial summary judgment, on the basis that, *inter alia*, Fair should not be able to pursue a claim that Ball Memorial's pharmacist or pharmacy staff breached the duty of care because that argument had not been made to the Panel. (Appellant's App. 59-72). Ball Memorial argued that (1) Fair designated no admissible expert testimony that any Ball Memorial employee breached the duty of care, (2) Fair could not pursue a claim based on negligence by the pharmacy staff, (3) Ball Memorial is not vicariously liable for any acts or omissions by Meridian Services or its employees, and (4) Ball Memorial is entitled to an order that any liability it *could* be found to incur would be vicarious and based on the alleged fault of Meridian Services.

[13] On February 17, 2014, Fair responded to Ball Memorial's motion for summary judgment, arguing that she should be able to pursue a claim against Ball Memorial's pharmacist, claiming that (1) Indiana Supreme Court precedent and the Medical Malpractice Act allowed it, (2) she should be able to argue pharmacist negligence because she alleged in the proposed complaint that Dickey had been given an improper dose of risperidone, and (3) fairness dictated the she be able to pursue the claim because defendants raised it first. (Appellant's App. 176-77).

[14] On February 27, 2014, the trial court held a hearing, after which it entered partial summary judgment in Ball Memorial's favor, concluding that there was no factual dispute that the nurses who treated Dickey were employees of Meridian Services, not Ball Memorial. (Appellant's App. 37-38). The trial court, however, denied Ball Memorial's summary judgment on the issue of whether Fair could pursue a claim against the pharmacist, found that genuine issues of material fact existed on the question of Ball Memorial's liability for the acts of Meridian Services, and declined to address the question of whether Ball Memorial's liability (if any) is limited to vicarious liability for the acts or omissions of Meridian Services. (Appellant's App. 39).

[15] Ball Memorial contends that (1) the trial court erred in denying it summary judgment because Fair may not pursue a claim based on the alleged negligence of the Ball Memorial pharmacist; (2) the trial court correctly concluded that the nurses whose care is at issue were not Ball Memorial employees; and (3) because Fair may not pursue any claims against any Ball Memorial employee,

Ball Memorial's potential vicarious liability is therefore limited to that incurred by Meridian Services. Fair argues that (1) the trial court correctly denied Ball Memorial's summary judgment motion and Fair should be able to present evidence tending to show negligence by Ball Memorial's pharmacist and (2) the trial court correctly declined to rule on the question of whether Ball Memorial's potential liability is limited to vicarious liability for acts committed by Meridian Services. Dr. Yazgan and Meridian Services argue that (1) because there is no statutory requirement that they present possible defenses to the Panel, they should not be precluded from presenting evidence regarding possible negligence on the part of Ball Memorial's pharmacist even if we rule in favor of Ball Memorial on its summary judgment claim and (2) any order relating to vicarious liability should be consistent with their right to present their defenses. *Amicus curiae* Indiana Trial Lawyers Association ("the ITLA") argues that the Indiana Supreme Court has held that a plaintiff's action in the trial court is not restricted by arguments made to the Panel and that authority from this court to the contrary should not be followed.

# Discussion and Decision

### *Standard of Review*

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material

fact and the moving party is entitled to a judgment as a matter of law. *Id*.; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id*. Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id*. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id*.

# I. Fair's Claim Against the Pharmacist

[17] Ball Memorial contends that the trial court erred in declining to enter summary judgment in its favor on the question of whether Fair may pursue claims of negligence by Ball Memorial's pharmacist. Fair argues that she should be allowed to present evidence of pharmacist negligence because she presented evidence of the administration of excessive dosages of Geodon and risperidone to the Panel; this court's opinion in *K.D. v. Chambers*, 951 N.E.2d 855, 857 (Ind. Ct. App. 2011), *trans. denied*, *disapproved on other grounds by Spangler v. Bechtel*, 958 N.E.2d 458, 466 n.5 (Ind. 2011), conflicts with the Indiana Supreme Court's decision in *Miller by Miller v. Mem'l Hosp. of S. Bend, Inc.*, 679 N.E.2d 1329, 1331 (Ind. 1997), and the Indiana Rules of Trial Procedure; and *K.D.* is distinguishable in any event. The ITLA also argues that *K.D.* is not good law

but adds that the Panel's opinion should not be limited to arguments made by non-expert claimants as a matter of policy.

# Background

The Indiana Medical Malpractice Act ("the ACT") governs medical malpractice claims against health care providers, with malpractice defined as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. "[A]n action against a health care provider may not be commenced in a court in Indiana before … the claimant's proposed complaint has been presented to a medical review panel established under IC 34-18-10 (or IC 27-12-10 before its repeal); and … an opinion is given by the panel." Ind. Code § 34-18-8-4.

> (a) The evidence in written form to be considered by the medical review panel shall be promptly submitted by the respective parties.
> (b) The evidence may consist of medical charts, x-rays, lab tests, excerpts of treatises, depositions of witnesses including parties, and any other form of evidence allowable by the medical review panel.
> (c) Depositions of parties and witnesses may be taken before the convening of the panel.
> (d) The chairman shall ensure that before the panel gives its expert opinion under section 22 of this chapter, each panel member has the opportunity to review every item of evidence submitted by the parties.
> (e) Before considering any evidence or deliberating with other panel members, each member of the medical review panel shall

take an oath in writing on a form provided by the panel chairman, which must read as follows:

> "I (swear) (affirm) under penalties of perjury that I will well and truly consider the evidence submitted by the parties; that I will render my opinion without bias, based upon the evidence submitted by the parties, and that I have not and will not communicate with any party or representative of a party before rendering my opinion, except as authorized by law.".

Ind. Code § 34-18-10-17.

> After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall, within thirty (30) days, give one (1) or more of the following expert opinions, which must be in writing and signed by the panelists:
>
> (1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
>
> (2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
>
> (3) There is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury.
>
> (4) The conduct complained of was or was not a factor of the resultant damages.

Ind. Code § 34-18-10-22. This issue boils down to whether Fair's proposed complaint was sufficient to preserve a claim against Ball Memorial's pharmacist, even though negligence by neither the pharmacist nor any member of the pharmacist's staff was specifically alleged in the proposed complaint.

# Analysis

[19]   Much of the discussion of this issue revolves around two cases, with Ball Memorial relying on this court's holding in *K.D.*, 951 N.E.2d at 855, while Fair and the ITLA argue that *K.D.* is in conflict with the Act and the Indiana Supreme Court's opinion in *Miller*, 679 N.E.2d at 1329. Because we need not rely on *K.D.* to reach our conclusion on this issue, we leave the question of *K.D.*'s validity for another day.[1]

[20]   In *Miller*, Nicholas Miller and his parents brought suit against Dr. Herbert Schiller and Memorial Hospital of South Bend ("the Hospital") for injuries sustained at or around the time of Nicholas's June 7, 1982, birth. *Id.* at 1330. Dr. Schiller's negligent actions were alleged to have taken place "'on or about June 1, 1982'" while the Hospital's negligent acts were alleged as occurring "'on and after June 7, 1982[.]'" *Id.* After presenting the proposed complaint to, and obtaining an opinion from a medical review panel, the Millers filed suit in trial court. *Id.* After the Millers settled with Dr. Schiller, the Hospital moved for summary judgment, arguing, *inter alia*, that the injuries allegedly sustained by Nicholas due to the actions of Dr. Schiller and/or the Hospital were identical. *Id.* at 1331. When the Millers responded that their claims against the Hospital were only for its alleged post-natal negligence, while their claims against Dr. Schiller were for his *pre*-natal negligence, the Hospital countered

---

[1] The parties also argue about the application to this case of this court's decision in *Stafford v. Szymanowski*, 13 N.E.2d 890 (Ind. Ct. App. 2014), *trans. pending*. On February 5, 2015, the Indiana Supreme Court granted transfer in *Stafford*, and it therefore has no precedential value.

that no distinction between pre- and post-natal negligence had been made the medical review panel. *Id.* After the trial court granted summary judgment to the Hospital, the Millers appealed. *Id.*

[21] The *Miller* court first noted that there is no dispute that, if there are two separate acts of medical malpractice that cause distinct injuries, there may be two recoveries. *Id.* at 1332. The court then explained the general principles of notice pleading that are used in Indiana:

> The principles of notice pleading are utilized in Indiana. Our rules require that "all pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." Ind. Trial Rule 8(F). Specifically, Indiana Trial Rule 8(A) requires only "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader deems entitled...." This rule "is designed to discourage battles over mere form of statement and to sweep away needless controversies that have occurred either to delay trial on the merits or to prevent a party from having a trial because of mistakes in statement." 1 William F. Harvey, Indiana Practice, Rule 8(a) (2d ed. 1987). Our notice pleading rules do not require that the complaint state all the elements of a cause of action. *State v. Rankin*, 260 Ind. 228, 231, 294 N.E.2d 604, 606 (Ind. 1973). A plaintiff "essentially need only plead the operative facts involved in the litigation." *Id.* at 231, 294 N.E.2d at 606.

*Miller*, 679 N.E.2d at 1332.

[22] The *Miller* court reversed the trial court's grant of summary judgment to the Hospital, concluding that the Millers' proposed complaint was sufficient to preserve separate claims against Dr. Schiller and the Hospital. *Id.* The court

noted that the complaints filed by the Millers contained separate counts for each defendant and specified different dates for each defendant's alleged acts of malpractice. *Id.* The court concluded that "[w]hile a medical malpractice plaintiff must, as a prerequisite to filing suit, present the proposed complaint for review and expert opinion by a medical review panel, there is no requirement for such plaintiff to fully explicate and provide the particulars or legal contentions regarding the claim." *Id.*

[23] The application of *Miller* to this case leads us to conclude that Fair may pursue a claim of negligence against Ball Memorial's pharmacist in the trial court. As mentioned, the *Miller* court's disposition was based on the principles of notice pleading, which do not require that a complaint state all of the elements of a cause of action or anything more than the "'operative facts involved in the litigation.'" *Miller*, 679 N.E.2d at 1332 (quoting *State v. Rankin*, 260 Ind. 228, 231, 294 N.E.2d 604, 606 (Ind. 1973)). Fair has satisfied *Miller*'s requirements. As previously mentioned, Fair's proposed complaint alleged, *inter alia*, that Ball Memorial's "nurses *and staff* failed to properly administer medications and [monitor] the effects of the medication[.]" Appellant's App. p. 77 (emphasis added). It is not disputed that Ball Memorial's pharmacist is a member of the hospital's staff. Moreover, because "administer" may be defined as "to mete out [or] dispense[,]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 27 (Phillip Babcock Gove et al. eds., G.&C. Merriam Company 1964), Ball Memorial's pharmacist was involved in the administration of the medications to Dickey. In other words, Ball Memorial was put on notice that the possible

negligence of *any* member of its staff involved in the administration of the medications was at issue, which includes the pharmacist. The trial court correctly denied Ball Memorial summary judgment on this point.

## II. Dr. Yazgan and Meridian Services' Claim Against the Pharmacist

[24] While Dr. Yazgan and Meridian Services took no position on whether Fair may be allowed to pursue a claim against Ball Memorial's pharmacist, they argue that the resolution of that question does not affect their right to raise his possible negligence as a defense, even though they did not raise the issue before the Panel. Ball Memorial agrees that a medical malpractice defendant has no responsibility to identify claims or defenses to a medical review panel. Because Fair does not dispute this, we need not address it further. However, because the merits may be addressed quickly, we choose to do so.

[25] The Act places the burden on a medical malpractice plaintiff to bring claims before a medical review panel, *see* Ind. Code § 34-18-8-4(1), but no similar burden is placed on defendants to present defenses.

> Necessarily, the initial burden falls upon the party submitting the proposed complaint. Without evidence from the complainant in support of the proposed complaint the review panel is unable to "express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint." Only when the complainant's evidence is submitted is the defendant in the proposed complaint compelled

to come forward with evidence in response to the complainant's evidence.

*Galindo v. Christensen*, 569 N.E.2d 702, 705-06 (Ind. Ct. App. 1991) (citation omitted). Because Dr. Yazgan and Meridian Services had no burden to place allegations of pharmacist negligence before the panel, they are not precluded from presenting such evidence in the trial court.

# III. Ball Memorial's Vicarious Liability

[26] Ball Memorial contends that its potential liability in this case should be limited to vicarious liability for the alleged negligence of Dr. Yazgan or Meridian Services, which is limited by the Act to $250,000.00. Dr. Yazgan and Meridian Services take no position on this issue, other than to emphasize that any disposition should not affect their right to present their defense. Fair contends that the issue is not yet ripe for adjudication.

[27] Indiana Code section 34-18-14-3(d) provides as follows:

> (d) If a health care provider qualified under this article (or IC 27-12 before its repeal) admits liability or is adjudicated liable solely by reason of the conduct of another health care provider who is an officer, agent, or employee of the health care provider acting in the course and scope of employment and qualified under this article (or IC 27-12 before its repeal), the total amount that shall be paid to the claimant on behalf of the officer, agent, or employee and the health care provider by the health care provider or its insurer is two hundred fifty thousand dollars ($250,000). The balance of an adjudicated amount to which the claimant is entitled shall be paid by other liable health care providers or the patient's compensation fund, or both.

Fair is correct that this question is not yet ripe for adjudication. Because the question of negligence by Ball Memorial's pharmacist is still open, Ball Memorial is not entitled to an order limiting its potential liability to vicarious liability for the actions of Dr. Yazgan and Meridian Services.

# Conclusion

We conclude that the trial court correctly denied defendant Ball Memorial summary judgment on the question of whether plaintiff Fair may pursue a negligence claim against its pharmacist. Dr. Yazgan and Meridian Services may also raise potential negligence on the part of the Ball Memorial pharmacist as a defense. Because Fair has a claim of negligence against the Ball Memorial pharmacist, Ball Memorial is not entitled to an order limiting its liability pursuant to Indiana Code section 34-18-14-3(d) at this time.

We affirm the judgment of the trial court.

Najam, J., and Mathias, J., concur.