**K.D. and Michelle Campbell, Individually and as Parent and Legal Guardian of K.D., Appellants–Plaintiffs,**

v.

**Adrianne CHAMBERS, R.N., and Riley Children's Hospital, Appellees–Defendants.**

No. 49A04–1010–CT–636.

Court of Appeals of Indiana.

July 13, 2011.

Tina M. Bell, David W. Stewart, Stewart & Stewart, Carmel, IN, Attorneys for Appellants.

Robert G. Weddle, Matthew W. Conner, Elizabeth A. Schuerman, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

Michelle Campbell observed her two-year-old child, K.D., suffer a reaction from an overdose of Benadryl and filed suit on behalf of K.D. and herself for medical malpractice. After the proposed complaint was presented to a medical review panel, the case was set for jury trial. K.D. and Campbell ("Plaintiffs") now bring this interlocutory appeal from the trial court's grant of pretrial evidentiary motions by Adrianne Chambers, R.N. and Riley Children's Hospital ("Defendants"). On appeal, Plaintiffs raise the issues of whether the trial court abused its discretion when it: 1) granted Defendants' motion to exclude all expert testimony by toxicologist Daniel J. McCoy, Ph.D., on the grounds that he was not qualified to offer expert medical testimony; 2) granted Defendants' motion in limine to exclude evidence that Campbell suffered negligent infliction of emotional distress, on the grounds that no such claim had been properly pleaded; and 3) granted Defendants' motion in limine to exclude evidence of breaches of the standard of care, other than the overdose of Benadryl, that were not presented to the medical review panel.

As to the first issue, we conclude the trial court abused its discretion in excluding McCoy's testimony based solely on his curriculum vitae without holding an Evi-

dence Rule 702 hearing. As for the second issue, the trial court did not abuse its discretion because no claim of negligent infliction of emotional distress was sufficiently pleaded. As for the third issue, the trial court correctly excluded Plaintiffs from introducing evidence of separate breaches of the standard of care not presented to the medical review panel, but because one of those claimed breaches is within the scope of Plaintiffs' submission to the review panel, we reverse in part the trial court's grant of Defendants' motion. In sum, we affirm in part and reverse in part the trial court's orders and remand for further proceedings.

### Facts and Procedural History

On May 9, 1995, Campbell took K.D. to the emergency department of Riley Children's Hospital (the "Hospital") after he sustained a bump to the head. Campbell watched as Nurse Chambers administered an intravenous dose of Benadryl to K.D. Nurse Chambers administered an excessive dose of 125 milligrams, when the medically indicated dose for a child of K.D.'s age and size was 12.5 milligrams. K.D. soon exhibited a reaction to the overdose, his body shaking "as if a seizure." Appellants' Appendix at 37. Campbell informed Nurse Chambers that K.D. had never reacted to Benadryl in such a manner. K.D. was hospitalized overnight, treated, and released the next day. Since then, K.D. has continued to suffer from a tremor that Plaintiffs claim was proximately caused by the overdose.

In May 1997, Plaintiffs filed a proposed complaint with the Indiana Department of Insurance, naming Nurse Chambers and the Hospital, among others, as defendants. The two-count complaint alleged:

### COUNT I

* * *

4. [K.D.] came under the care and treatment of [two physicians] on May 9, 1995 and May 10, 1995 at the [Hospital].

5. [The two physicians] were careless and negligent in [the] care and treatment of [K.D.], as [K.D.] suffered a Benadryl overdose while under their care. [K.D.] received various other overdoses while under the care of defendant [sic].

6. As a direct and proximate result of the carelessness and negligence of these doctors, [K.D.] suffered from a Benadryl overdose.

7. As a direct and proximate result of carelessness and negligence of the aforementioned medical providers, [Campbell] has incurred medical and hospital expenses on behalf of her son.

8. As a direct and proximate result of the carelessness and negligence of the aforementioned doctors, [K.D.] has been permanently damaged.

* * *

### COUNT II

* * *

3. [K.D.] came under the care and treatment of [the Hospital] on May 9, 1995 and May 10, 1995.

4. [The Hospital] and it's [sic] employees, Adrianne Chambers, Hematology Staff and other employees were careless and negligent in their care and treatment of [K.D.].

5. As a direct and proximate result of the carelessness and negligence of [the Hospital], its employee nurse Adrianne Chambers and it's [sic] medical staff, [K.D.] suffered from multiple overdoses administered by defendants.

* * *

8. As a direct and proximate result of [the Hospital], Adrianne Chambers and its employees [sic] carelessness and

negligence, [Campbell] has incurred medical and hospital expenses on behalf of her son.

9. As a direct and proximate result of the carelessness and negligence of [the Hospital], [K.D.] has been permanently damaged.

Appellants' Appendix at 70–73.

In March 2004, Plaintiffs tendered a submission to the Medical Review Panel ("Review Panel") setting forth issues, facts, and evidence. Plaintiffs stated the "issues presented in this case" as:

Whether the Defendant, [Nurse] Chambers . . . was negligent and breached the standard of care in one or more of the following ways:

1) Failed to give the proper dosage of Benadryl as it was ordered.

2) Failed to question or ensure whether the dosage of Benadryl that she gave was an appropriate dosage for a child who weighed 15 kg.

Appellees' Appendix at 25. Plaintiffs' submission referred to the Proposed Complaint, attached as an exhibit along with medical records, but did not specify any overdoses or breaches of the standard of care other than the overdose of Benadryl. In August 2007, the Review Panel issued its opinion that:

The evidence supports the conclusion that defendants [Nurse] Chambers, R.N. and [the Hospital] failed to comply with the appropriate standard of care. . . . Such failure was a factor in temporary harm to the patient but without a loss of consciousness or long-term effects.

*Id.* at 31. The Review Panel found that the other named physicians and hematology staff had not breached the standard of care.

In September 2007, Plaintiffs filed their complaint in Marion Superior Court with allegations materially identical to their proposed complaint. Following discovery, a jury trial was scheduled for October 4, 2010. Defendants filed a motion to exclude the expert testimony of Daniel J. McCoy, Ph.D., on the grounds that he was not properly qualified as an expert. Plaintiffs filed a response to that motion arguing that McCoy's training as a toxicologist qualifies him to render relevant opinion and that "[i]f the court is inclined to grant [Defendants'] Motion, the Plaintiffs request that an evidentiary hearing be set so that Dr. McCoy may testify as to his qualifications." Appellants' App. at 40–41.

Defendants also filed a First Motion in Limine to exclude "all references to any claim of negligent infliction of emotional distress on behalf of [Campbell] because Plaintiffs failed to properly plead this cause of action." *Id.* at 64. Plaintiffs filed a response to that motion and also filed a proposed issue instruction outlining three claims of breaches of the standard of care: 1) that K.D. was given ten times more than the recommended dose of Benadryl; 2) that "the rate at which the Benadryl was pushed was deviation in the standard of care"; and 3) that "the giving of additional central nervous system depressants in the face of specific order to the contrary was a deviation in the standard of care." Appellees' App. at 7. In response to the proposed issue instruction, Defendants filed a Second Motion in Limine to exclude all references to the latter two claimed breaches of the standard of care, arguing these breaches had not been presented to the Review Panel and were not properly before the trial court.

The trial court held a hearing on Defendants' motions at which it heard argument of counsel and afterwards granted all three motions by separate orders. The order on Defendants' motion to exclude McCoy stated:

It is hereby ordered, adjudged and decreed all expert testimony from Daniel McCoy, Ph.D. shall be excluded from the jury trial on the grounds that he is not properly qualified to offer expert medical testimony.

Appellants' App. at 11 (capitalization omitted). The order on Defendants' First Motion in Limine provided that Plaintiffs shall not mention or convey to the jury any claim of negligent infliction of emotional distress on behalf of Campbell. As to Defendants' Second Motion in Limine, the trial court ordered that Plaintiffs shall not mention, offer evidence of, or convey to the jury "any alleged breaches in the standard of care that were not presented to the Medical Review Panel." *Id.* at 13.

At Plaintiffs' request, the trial court continued the jury trial and certified its orders in limine for interlocutory appeal. This court accepted jurisdiction.

*Discussion and Decision*

### I. Standard of Review

■ We review for an abuse of discretion a trial court's ruling on a pretrial motion in limine. *Chacon v. Jones–Schilds*, 904 N.E.2d 286, 288–89 (Ind.Ct. App.2009). The trial court's grant of such motions is an adjunct of its inherent authority to admit and exclude evidence. *Butler v. Kokomo Rehab. Hosp., Inc.*, 744 N.E.2d 1041, 1046 (Ind.Ct.App.2001), *trans. denied.* We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

### II. Exclusion of McCoy's Testimony

■ The trial court functions as the gatekeeper for expert opinion testimony. *Norfolk S. Ry. Co. v. Estate of Wagers*, 833 N.E.2d 93, 101 (Ind.Ct.App.2005), *trans. denied.* Indiana Evidence Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

For a witness to testify as an expert, certain requirements must be met. *Norfolk S.*, 833 N.E.2d at 101. "First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average layperson; and second, the witness must be shown to have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact." *Id.* "The proponent of expert testimony bears the burden of establishing the foundation and reliability of the scientific principles and tests upon which the expert's testimony is based." *Id.* at 101–02.

Defendants argue this court's previous decisions have determined that only physicians can offer expert testimony regarding medical causation. In their arguments to the trial court, they further pointed out that McCoy is not a health care provider under Indiana law and does not have specialized experience in treating or diagnosing patients with neurological disorders including tremors, such as K.D.'s at issue here. Plaintiffs respond that an expert's education or licensure as a physician is not alone determinative, that the trial court should have held an evidentiary hearing to receive further evidence on McCoy's training and experience as relevant to his qualifications, and that in any event the trial court's ruling is overbroad because it ex-

cludes all expert testimony by McCoy, not just opinions regarding medical causation.

Both parties discuss this court's decision in *Bennett v. Richmond,* 932 N.E.2d 704 (Ind.Ct.App.2010), *vacated,* where our supreme court granted transfer on May 19, 2011, one day after the parties completed briefing this case. As our supreme court has not yet issued an opinion in *Bennett,* we discuss and apply the pertinent legal principles without reference to that case. *See Meyer v. Biedron,* 667 N.E.2d 752, 752–53 (Ind.1996) (stating that when transfer is granted, Court of Appeals opinion is "held for naught" (quotation omitted)). Yet we note as dictum that the present case is distinguishable in that the training of the expert in *Bennett* is very different from that of McCoy.[1]

The record contains McCoy's curriculum vitae, which shows he earned a B.S. in Chemistry from Marian College in 1968 and a Ph.D. in Toxicology from the Indiana University School of Medicine in 1974. With over thirty-five years of experience as a practicing toxicologist, McCoy has served as the director of a regional poison control center in Grand Rapids, Michigan, where he was responsible for, among other things, the management of patients exposed to toxic agents "including drug overdoses and therapeutic misadventures." Appellants' App. at 21. In previously overseeing a forensic laboratory in Indiana, McCoy has analyzed data in determining the manner and causes of deaths due to toxic agents. From 1996 through 1998, he served as President of the American Board of Applied Toxicology. In his affidavit submitted to the trial court, McCoy averred he had reviewed K.D.'s medical records and would opine that "[t]he fine tremors now documented in [K.D.]'s hands are consistent with a Benadryl overdose given the magnitude of the overdose, his documented seizure like activity in hours after the overdose and because the drug was delivered intravenously." *Id.* at 33. Although McCoy could not rule out other possible causes, his review indicated K.D.'s tremors "are more likely than not related to the Benadryl overdose." *Id.* at 34.

The trial court excluded McCoy's entire testimony based solely on his curriculum vitae and lack of a medical degree. Under the facts and circumstances of this case, we agree with Plaintiffs that the trial court's complete exclusion of McCoy's testimony was premature and overbroad. While this court has previously stated that "questions of medical causation of a particular injury are questions of science necessarily dependent on the testimony of physicians and surgeons learned in such matters," *Hannan v. Pest Control Servs., Inc.,* 734 N.E.2d 674, 679 (Ind.Ct.App. 2000), *trans. denied,* the reasoning for such statements is that physicians are uniquely qualified to diagnose and treat disease. *See Clarian Health Partners, Inc. v. Wagler,* 925 N.E.2d 388, 396–97 (Ind.Ct.App.2010), *trans. denied.* McCoy's proposed testimony does not relate to diagnosing or treating a disease, or to whether the standard of care was breached, because the fact K.D. suffered an overdose is undisputed. Rather, McCoy's proposed testimony relates to the toxic effects of the overdose and whether these include K.D.'s tremor.[2] In light of

---

1. In *Bennett,* the expert is a psychologist who, besides not being a medical doctor, had not received "any education or training relevant to determining the etiology of brain injuries." 932 N.E.2d at 709. In contrast, McCoy's training as a toxicologist is, at the least, relevant to determining the effects of a Benadryl overdose, as explained in further detail below.

2. Hence, this case is different from *Schmidt v. State,* 816 N.E.2d 925, 941 (Ind.Ct.App.2004), *trans. denied,* where we held that (apparently

McCoy's training in toxicology, his lack of a medical degree does not preclude him as a matter of law from offering such testimony. *See Person v. Shipley*, 949 N.E.2d 386, 391 (Ind.Ct.App.2011) (publication ordered June 8, 2011) (stating that expert with Ph.D. in biomedical engineering was qualified to render opinion on causation when his "testimony as to the lack of a causal relationship between the accident and the injuries focus[ed] on the science of engineering and physics as opposed to the science of medicine").

We conclude Plaintiffs may be able to establish at an Evidence Rule 702 hearing that McCoy has sufficient qualifications to testify about the toxic effects of K.D.'s Benadryl overdose. Even if his causation testimony is not ultimately admissible, his training as a toxicologist could support admitting other expert testimony, such as regarding the chemical properties of Benadryl or possible effects from such an overdose generally.[3] We accordingly reverse the trial court's grant of Defendants' motion to exclude McCoy and remand with instructions to hold an Evidence Rule 702 hearing at which Plaintiffs may present further evidence of McCoy's qualifications and the scientific basis of his proposed testimony. *Cf. Ollis v. Knecht*, 751 N.E.2d 825, 830 (Ind.Ct.App.2001) (discussing pretrial evidentiary hearing under Rule 702(b)), *trans. denied.*

### III. Negligent Infliction of Emotional Distress

■ Plaintiffs argue that the trial court abused its discretion in precluding them from presenting to the jury any evidence of Campbell's claim of negligent infliction of emotional distress. Defendants respond that Plaintiffs failed to sufficiently plead such a claim in either their proposed complaint before the Review Panel or their complaint before the trial court.

■ Negligent infliction of emotional distress is an independent tort and not merely an element of damages. *Ind. Patient's Compensation Fund v. Winkle*, 863 N.E.2d 1, 6 (Ind.Ct.App.2007), *trans. denied.* As recognized in Indiana, it has two "separate and distinct" branches. *Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 998 (Ind.2006). Under the "direct impact rule," a plaintiff can recover by demonstrating, among other things, a "direct physical impact resulting from the negligence of another." *Id.* at 997. Alternatively, under the "bystander rule," one can recover damages "by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff," including the relationship of parent-child, and the death or severe injury was "caused by the defendant's negligent or otherwise tortious conduct." *Id.* at 997–98 (quoting *Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind.2000)). Under the bystander rule, the plaintiff also must have sustained emotional trauma "which is serious in nature and of a kind and extent normally expected to occur in a reasonable person." *Groves*, 729 N.E.2d at 573. Plaintiffs argue that the bystander rule applies here because Campbell saw K.D. suffer a seizure-like reaction from the overdose of Benadryl caused by Defendants.

■ In general, a complaint need not state all elements of the cause of action, and under Indiana's notice pleading rules,

---

the same) Daniel McCoy, Ph.D. toxicologist, was *not qualified to testify regarding past medical diagnoses that the defendant's physicians had rendered.*

3. Defendants appear to concede this point, stating they conceded to the trial court "that McCoy could testify regarding toxicology issues, but not medical causation." Appellees' Brief at 9.

a plaintiff need only "plead the operative facts involved in the litigation." *State v. Rankin*, 260 Ind. 228, 231, 294 N.E.2d 604, 606 (1973). We have previously explained:

> [U]nder notice pleading, the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it. A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues. For a defendant to make efficient and educated legal decisions regarding their case, the complaint must put the defendant on notice concerning why it is potentially liable and what it stands to lose. One of the main functions of pleading is to give notice to the parties of the nature of the claims and defenses, in order to help them prepare their cases.

*Butler*, 744 N.E.2d at 1046 (quotations, citations, and alterations omitted).

Here, Plaintiffs' proposed complaint and trial court complaint do not mention Campbell's emotional distress in any way. They do not mention the operative fact that Campbell saw K.D. suffer the reaction from the overdose. The only allegations as to Campbell are that she "incurred medical and hospital expenses" for K.D. Appellants' App. at 71, 72–73, 80, 82. Moreover, there are no facts in the complaints that suggest Campbell suffered severe emotional distress akin to witnessing the death or severe injury of a loved one. While it was undoubtedly an upsetting experience for Campbell to watch K.D.'s seizure-like reaction from the overdose, many occurrences of malpractice can have upsetting effects for parents or other loved ones of a patient, and such a fact alone does not make medical providers aware that emotional distress will serve as a basis for a legal claim. While Plaintiffs now argue

they should be permitted to amend their complaint to add a claim for negligent infliction of emotional distress, they do not point to anywhere in the record where they sought leave to amend, so whether an amendment could be permitted now is not properly before this court. The trial court did not abuse its discretion by granting Defendants' motion to exclude all references to Campbell's claim of negligent infliction of emotional distress, a claim Plaintiffs failed to sufficiently plead.

### IV. Breaches of Standard of Care Not Presented to Review Panel

 Plaintiffs argue the trial court abused its discretion in granting Defendants' motion to exclude any evidence of breaches of the standard of care that were not presented to the Review Panel. Specifically, Plaintiffs argue the trial court erred in "exclud[ing] all evidence on the rate at which the Benadryl was administered and all evidence regarding the improper administration of additional central nervous system depressants to [K.D.] while he was hospitalized" on the grounds that these claimed breaches were not specified in Plaintiffs' proposed complaint or their submission to the Review Panel. Brief of Appellants at 10–11. Defendants respond that exclusion was proper on the grounds that Plaintiffs, in their proposed issue instruction, raised these occurrences as additional breaches of the standard of care that they failed to present to the Review Panel.

 Indiana's Medical Malpractice Act ("MMA") is a procedural mechanism for claims of medical malpractice. *Ind. Patient's Compensation Fund v. Patrick*, 929 N.E.2d 190, 193–94 (Ind.2010). The MMA requires, absent certain exceptions not applicable here, that before a malpractice claim is pursued in court, it must be presented to a medical review panel in a proposed complaint. Ind.Code § 34–18–8–

4. After the proposed complaint is filed and the panel selected, "[t]he evidence in written form to be considered by the medical review panel shall be promptly submitted by the respective parties." Ind.Code § 34–18–10–17(a). While the panel "may consult with medical authorities" and "may examine reports of other health care providers necessary to fully inform the panel regarding the issue to be decided," Ind. Code § 34–18–10–21, it must render its decision "based upon the evidence submitted by the parties," Ind.Code § 34–18–10–17(e). The panel is directed to issue an expert opinion "as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint." Ind. Code § 34–18–10–22(a). Until the panel issues its opinion, the trial court has no jurisdiction to hear and adjudicate the malpractice claim. *Putnam County Hosp. v. Sells,* 619 N.E.2d 968, 970 (Ind.Ct.App. 1993).

■ As the above statutory provisions show, the question of whether defendants breached the standard of care must be presented to the medical review panel and answered based on the evidence submitted to it. It logically follows that a malpractice plaintiff cannot present one breach of the standard of care to the panel and, after receiving an opinion, proceed to trial and raise claims of additional, separate breaches of the standard of care that were not presented to the panel and addressed in its opinion.

Plaintiffs' proposed complaint alleged malpractice committed on May 9 and 10, 1995, and that the Defendants, besides the overdose of Benadryl, gave K.D. "multiple overdoses" and "various other overdoses." Appellants' App. at 71–72. These pleading allegations were not per se insufficient, under notice pleading, to give Defendants notice of claimed breaches of the standard of care other than the overdose of Benadryl. However, Plaintiffs' submission to the Review Panel contained no statement or argument and, so far as can be discerned from the appellate record, no evidence of any breaches besides the overdose of Benadryl. Plaintiffs' submission stated, as the only issues for the Review Panel's consideration,

> [w]hether the Defendant, [Nurse] Chambers ... was negligent and breached the standard of care in one or more of the following ways:
>
> 1) Failed to give the proper dosage of Benadryl as it was ordered.
>
> 2) Failed to question or ensure whether the dosage of Benadryl that she gave was an appropriate dosage for a child who weighed 15 kg.

Appellees' App. at 25. In accord with this statement of the issues, the Review Panel's opinion that "[t]he evidence supports the conclusion that [Defendants] failed to comply with the appropriate standard of care in their treatment of the patient," *id.* at 31, implies a conclusion regarding only the Benadryl overdose, not separate breaches of the standard of care not within the scope of Plaintiffs' submission to the Review Panel.

In support of their argument, Plaintiffs cite our supreme court's reasoning in *Miller v. Mem'l Hosp. of South Bend, Inc.,* 679 N.E.2d 1329 (Ind.1997). *Miller* involved the issue of whether a plaintiff's proposed complaint sufficiently articulated two separate injuries so as to avoid certain limitations on recovery imposed by the MMA. *Id.* at 1330. After concluding the complaint was sufficient in that respect, our supreme court rejected the hospital's argument that the plaintiffs were required and failed to raise the distinction between the two injuries in their submission to the medical review panel. *See id.* at 1331 (not-

ing the hospital's argument "that the plaintiffs never raised the distinction between prenatal and postnatal injuries in their . . . submission to the medical review panel. . . ."). It was in response to that specific argument that our supreme court wrote the following language, upon which Plaintiffs now rely:

> We decline to accept Memorial Hospital's argument that the plaintiffs' action is restricted by the substance of the submissions presented to the medical review panel. . . . While a medical malpractice plaintiff must, as a prerequisite to filing suit, present the proposed complaint for review and expert opinion by a medical review panel, there is no requirement for such plaintiff to fully explicate and provide the particulars or legal contentions regarding the claim.

*Id.* at 1332. As we are addressing a different issue, namely, Plaintiffs' failure to present all claimed breaches of the standard of care to the Review Panel, we do not interpret the above language so broadly as to allow a plaintiff to argue at trial separate breaches of the standard of care that were not presented in a submission of evidence to the panel. Whereas the number of occurrences of malpractice and allowable recoveries under the MMA has been treated as a question of law, *see Patel v. Barker,* 742 N.E.2d 28, 31–33 (Ind.Ct. App.2001) (addressing statutory interpretation), *trans. denied,* the factual question of whether the standard of care was breached must be initially addressed and answered by the panel. *See* Ind.Code § 34–18–10–22.

Returning to the record before us, the Review Panel was not presented the question of whether "the giving of additional central nervous system depressants in the face of specific order to the contrary was a deviation in the standard of care." Appellees' App. at 7 (Plaintiffs' proposed issue instruction). Yet Plaintiffs, in their proposed instruction, sought to present the same to the jury as a separate breach of the standard of care, in addition to the overdose of Benadryl. Because the giving of additional improper doses was not within the scope of Plaintiffs' submission to the Review Panel, they cannot now raise the same as a separate breach, and in this respect we affirm the trial court's ruling to exclude such evidence. We reach a different conclusion, however, regarding Plaintiffs' claim that "the rate at which the Benadryl was pushed was deviation in the standard of care." *Id.* The failure to give the proper dosage to a child can encompass both the total amount of the drug administered as well as the rate at which the drug is administered. Defendants make too fine a distinction in arguing that only the total amount, not the rate, was before the Review Panel when both allegations stem from the same operative fact of the Benadryl overdose. We therefore conclude the trial court abused its discretion to the extent it precluded Plaintiffs from introducing evidence or arguing that the rate at which the Benadryl was administered breached the standard of care.

To summarize, we affirm the trial court's ruling to exclude evidence that K.D. received other improper doses besides the Benadryl, to the extent Plaintiffs sought to offer this claimed fact as an additional breach of the standard of care not presented to the Review Panel. However, we reverse the trial court's ruling to exclude evidence of the allegedly improper rate at which the Benadryl was administered, and we remand with instructions for the trial court to issue a revised order in limine consistent with this opinion.

### Conclusion

The trial court's grant of Defendants' motion to exclude McCoy's expert testimo-

ny is reversed and the case remanded with instructions to hold an Evidence Rule 702 hearing. The trial court's grant of Defendants' first motion in limine is affirmed. The trial court's grant of Defendants' second motion in limine is affirmed in part and reversed in part, and we instruct the trial court to issue a revised order in limine accordingly.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and CRONE, J., concur.