

FILED

Feb 22 2017, 5:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael E. O'Neill
Nathan D. Hansen
O'Neill McFadden & Willett LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEE

Barry D. Rooth
Holly S.C. Wojcik
Theodoros & Rooth PC
Merrillville, Indiana

David W. Westland
Westland & Bennett PC
Schererville, Indiana

ATTORNEYS FOR AMICUS CURIAE

DEFENSE TRIAL COUNSEL OF
INDIANA

Donald B. Kite, Sr.
Wuertz Law Office, LLC
Indianapolis, Indiana

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEY FOR AMICUS
CURIAE

INDIANA TRIAL LAWYERS
ASSOCIATION

Jerry Garau
Garau Germano, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pastor Llobet, M.D., *Appellant-Defendant,* v. Juan Gutierrez, *Appellee-Plaintiff* | February 22, 2017 Court of Appeals Case No. 45A04-1605-CT-1133 Appeal from the Lake Superior Court The Honorable Calvin Hawkins, Judge Trial Court Cause No. 45D02-1307-CT-45 |

**Vaidik, Chief Judge.**

# Case Summary

Dr. Pastor Llobet performed an angiogram on Juan Gutierrez, and Gutierrez now claims that Dr. Llobet committed medical malpractice. As required by Indiana's Medical Malpractice Act, Gutierrez first filed a proposed complaint with the Department of Insurance and presented his case to a panel of doctors (a "medical review panel"). His specific argument to the panel was that Dr. Llobet was negligent in his technical performance of the angiogram. The panel issued an opinion in favor of Gutierrez, who then took the case to court.

Shortly before trial was set to begin, it became apparent that Gutierrez intended to present a second theory of malpractice: that the angiogram was unnecessary, i.e., not "indicated." At that point, Dr. Llobet turned over records from testing that was performed the day before the angiogram—records that apparently support his position that the angiogram was, in fact, indicated. He also moved

to strike Gutierrez's "angiogram-not-indicated" theory altogether, on the basis that Gutierrez did not argue it to the medical review panel. Gutierrez countered with a motion to bar Dr. Llobet from using the testing records, noting that the discovery deadline had passed and arguing that the records had been requested on multiple occasions. The trial court denied Dr. Llobet's motion but granted Gutierrez's motion. As it stands, then, Gutierrez would be allowed to present his "angiogram-not-indicated" theory, but Dr. Llobet would not be allowed to respond with a key piece of evidence contradicting that theory.

[3] Because Gutierrez's "angiogram-not-indicated" theory was encompassed by the proposed complaint he filed with the Department of Insurance and is related to evidence that was submitted to the medical review panel, we affirm the denial of Dr. Llobet's motion to strike. However, because we conclude that Dr. Llobet should be allowed to use the pre-angiogram testing records to respond to the allegation that the angiogram was not indicated, we reverse the trial court's order barring that evidence.

# Facts and Procedural History

[4] In April 2007, Gutierrez began seeing Dr. Llobet for treatment of peripheral vascular disease. On September 25, 2007, a technician for Dr. Llobet performed an arterial Doppler study and ankle-brachial index ("ABI") testing on Gutierrez (ABI testing measures and compares ankle and arm blood pressures). Dr. Llobet decided to perform an angiogram (a procedure used to

obtain x-rays of arteries and veins) and was doing so the next day when a previously placed stent broke and became dislodged. Gutierrez underwent surgery to have the broken stent removed, and he claims that he suffered serious injuries as a result.

[5] In September 2009, Gutierrez filed a proposed complaint against Dr. Llobet with the Indiana Department of Insurance. He alleged, generally, that "[t]he health care provided to the Plaintiff, JUAN GUTIERREZ, on September 26, 2007, fell below the applicable standard of care[.]" Appellant's App. Vol. II p. 31. A medical review panel was formed, and the parties made submissions to the panel. In his submission to the panel, Gutierrez more specifically alleged that "[t]he cause of the broken left iliac artery stent during the September 26, 2007 angiogram procedure was negligent forcing of the Ansel sheath through the existing iliac stent by Dr. Llobet." *Id.* at 65.

[6] In August 2012, the medical review panel requested additional information from the parties. Among other things, the panel asked:

> Before the September 2007 procedure, were any additional tests performed? For instance, in the admission note of Dr. Llobet dated September 26, 2007, it made reference to an abnormal Doppler. The panelists do not believe that this Doppler finding was included in the information. If it was, could someone please direct us to it[?] If it was not, were there any written findings from the same[?]

*Id.* at 131. In response, Dr. Llobet produced records from the Doppler study done on September 25, 2007, but not records of the ABI testing done the same

day. In May 2013, the medical review panel unanimously concluded that Dr. Llobet "failed to comply with the appropriate standard of care as charged in the complaint." *Id*. at 133-43.

[7] Two months later, Gutierrez filed suit against Dr. Llobet. In his complaint, he noted the opinion of the medical review panel and alleged again that Dr. Llobet's actions "were negligent, careless, and fell below the applicable standard of care." *Id*. at 74.

[8] Trial was set to begin on February 16, 2016, but after Gutierrez retained new attorneys on February 2, the trial court pushed the trial back to the end of May. On February 11, one of Gutierrez's new attorneys deposed Dr. Llobet's expert, Dr. Lowell Steen, and questioned him extensively about the indications for the angiogram. Just before the beginning of his own deposition on February 19, Dr. Llobet produced, for the first time, records of the pre-angiogram ABI testing. Dr. Llobet testified during the deposition that he had located the ABI records two days earlier, on February 17, after learning that Dr. Steen had been questioned about the indications for the angiogram.

[9] Shortly after his deposition, however, Dr. Llobet moved to strike any allegation by Gutierrez that the angiogram was not indicated, on the ground that Gutierrez's only claim to the medical review panel had been that Dr. Llobet's technical performance of the angiogram had been negligent. He relied on *K.D. v. Chambers*, where this Court held that "a malpractice plaintiff cannot present one breach of the standard of care to the panel and, after receiving an opinion,

proceed to trial and raise claims of additional, separate breaches of the standard of care that were not presented to the panel and addressed in its opinion." 951 N.E.2d 855, 864 (Ind. Ct. App. 2011), *trans. denied*, *disapproved on other grounds by Spangler v. Bechtel*, 958 N.E.2d 458 (Ind. 2011). Gutierrez filed an opposition to Dr. Llobet's motion and then filed his own motion asking the trial court to bar Dr. Llobet from using the ABI records, given Dr. Llobet's delay in disclosing them.

[10] The trial court issued an order denying Dr. Llobet's motion to strike and a separate order granting Gutierrez's motion to bar the ABI records, but it certified both orders for interlocutory appeal. Dr. Llobet then sought this Court's permission to file such an appeal, which we granted.

# Discussion and Decision

[11] The parties cite the deferential abuse-of-discretion standard as the applicable standard of review. As to the exclusion of the ABI records, we agree. *See Hale v. State*, 54 N.E.3d 355, 357 (Ind. 2016) (explaining that discovery rulings are reviewed only for an abuse of discretion). However, the essence of Dr. Llobet's motion to strike the "angiogram-not-indicated" theory was that the theory is defective as a matter of law. We review such questions de novo. *Horton v. State*, 51 N.E.3d 1154, 1157 (Ind. 2016).

# I. Dr. Llobet's Motion to Strike

[12] On appeal, as in the trial court, Dr. Llobet's argument regarding his motion to strike is based on the above-quoted holding in *K.D.*, which he takes to mean that medical-malpractice plaintiffs "cannot bring one allegation of malpractice to the attention of the Medical Review Panel, and then attempt to later raise a separate allegation at trial[.]" Appellant's Br. p. 6. Because Gutierrez did not specifically raise his "angiogram-not-indicated" theory to the medical review panel, Dr. Llobet maintains that he should not be allowed to raise that theory in court.

[13] Six months after the trial court denied Dr. Llobet's motion to strike, and two weeks after Dr. Llobet filed his opening brief, a panel of this Court (with this author concurring) concluded that *K.D.*, to the extent it stands for the proposition that a medical-malpractice plaintiff cannot raise in court a theory of malpractice that was not specifically articulated to the medical review panel, "was wrongly decided." *McKeen v. Turner*, 61 N.E.3d 1251, 1261 (Ind. Ct. App. 2016), *trans. pending*. We based that conclusion on the following passage from our Supreme Court's decision in *Miller v. Memorial Hospital of South Bend, Inc.*:

> We decline to accept Memorial Hospital's argument that the plaintiffs' action is restricted by the substance of the submissions presented to the medical review panel. Pursuant to the [Indiana Medical Malpractice Act], the panel was authorized to review the medical records and other submitted material pertaining to each defendant's treatment of Nicholas. While a medical malpractice plaintiff must, as a prerequisite to filing suit, present the proposed complaint for review and expert opinion by a medical review

panel, there is no requirement for such plaintiff to fully explicate and provide the particulars or legal contentions regarding the claim.

679 N.E.2d 1329, 1332 (Ind. 1997) (citations omitted). In light of that holding and the language of the Medical Malpractice Act, we held in *McKeen* that a plaintiff can raise a theory in court if (1) it was encompassed, under the liberal rules of notice pleading, by the proposed complaint that was before the medical review panel and (2) evidence related to it was submitted to the panel. 61 N.E.3d at 1261. Not surprisingly, Gutierrez relies heavily on *McKeen* in his appellee's brief, which he filed a month after we issued that opinion. In his reply brief, Dr. Llobet argues that *McKeen*, not *K.D.*, was wrongly decided and that under *K.D.* he should prevail.[1]

[14] We believe that the holding in *McKeen*, and the rationale for that holding, are correct. Therefore, we reject Dr. Llobet's argument based on *K.D.* That does not end our analysis, however, for Dr. Llobet contends, in the alternative, that Gutierrez's "angiogram-not-indicated" theory should be stricken even under *McKeen*. While he acknowledges that evidence relating to that theory was submitted to the panel (satisfying the second prong of *McKeen*), he argues that the theory was not "encompassed" by Gutierrez's proposed complaint.

---

[1] Notably, while our Supreme Court denied transfer in *K.D.*, it did so only by virtue of a 2-2 vote, with then-Justice Dickson, who authored *Miller*, not participating. 962 N.E.2d 654 (Ind. 2011).

Dr. Llobet focuses on the fact that the pre-angiogram testing (or alleged lack thereof) took place on September **25**, 2007, while the proposed complaint only addressed "[t]he health care provided to the Plaintiff, JUAN GUTIERREZ, on September **26**, 2007," Appellant's App. Vol. II p. 31 (emphasis added). Dr. Llobet asserts that the proposed complaint "did not provide notice that treatment that occurred on September 25, 2007 was at issue[.]" Appellant's Reply Br. p. 11. But the events of September 25 are "at issue" only insofar as they relate to Gutierrez's ultimate claim that Dr. Llobet performed an unnecessary angiogram **on September 26**. Because that claim was plainly encompassed by Gutierrez's proposed complaint (and evidence related to the theory was submitted to the medical review panel), we affirm the trial court's denial of Dr. Llobet's motion to strike.

## II. Gutierrez's Motion to Bar Evidence

Alternatively, Dr. Llobet argues that when the trial court denied his motion to strike Gutierrez's "angiogram-not-indicated" theory, it should have also denied Gutierrez's motion to bar the ABI records.

In support of his argument, Dr. Llobet notes the following: (1) he disclosed the records within eight days of learning that Gutierrez intended to raise his "new" theory; (2) trial was still more than three months away when he disclosed the records; (3) there was no reason to disclose the records sooner because Gutierrez was originally only challenging the technical performance of the angiogram, not the indications for it; (4) the records go to the heart of

Gutierrez's "angiogram-not-indicated" theory, so they must be presented to the jury in order to achieve substantial justice; (5) Gutierrez himself did not strictly comply with pretrial deadlines and rules, including waiting until after the discovery deadline to seek to depose Dr. Llobet; (6) Gutierrez never specifically requested the records; (7) the technician records from studies performed at his office (such as ABI testing) are kept separate from his patient charts, which is why they were not disclosed with Gutierrez's chart; (8) his expert (Dr. Steen) did not rely upon or even review the ABI records until after Gutierrez raised the "angiogram-not-indicated" theory; and (9) he obviously did not intentionally withhold the records in bad faith, since they are favorable to him, i.e., they support his argument that the angiogram **was** indicated.

[18] In response, Gutierrez argues that Dr. Llobet received several requests that should have prompted him to produce the records. In addition to the medical review panel's August 2012 question about whether "any additional tests" were performed before the angiogram, Gutierrez notes that Dr. Llobet did not provide the records in response to (1) his September 2009 request for "a complete copy of his medical records and itemized statement," Appellee's App. Vol. II p. 16; (2) his April 2011 request for "[a]ll nursing, surgical tech or other similar records, notes or the like concerning Juan Gutierrez," Appellant's App. Vol. III p. 188; (3) his July 2014 interrogatories asking Dr. Llobet to identify all exhibits he intended to introduce at trial and all documents relevant to his defense; (4) his February 2016 requests for additional information about the opinions of Dr. Llobet's expert, Dr. Steen; and (5) his February 2016 request for

all of Dr. Llobet's office notes. Gutierrez also emphasizes that Dr. Llobet located the records two days before his deposition but did not turn them over until a few minutes before that deposition began, "depriving counsel of the opportunity to adequately prepare to question Dr. Llobet regarding the testing and the data." Appellee's Br. p. 34.

[19] The facts upon which Dr. Llobet relies are compelling, but so are those cited by Gutierrez, and if these were the only facts before us, we would be inclined to defer to the trial court's decision to bar the ABI records. But the fact that tips the scales in favor of Dr. Llobet is that starting on July 13, 2011—the day *K.D.* was handed down—he was operating under a rule that limited medical-malpractice plaintiffs to the theories of malpractice that were specifically presented to the medical review panel. The only specific theory Gutierrez presented to the medical review panel regarding the September 2007 angiogram was that Dr. Llobet was negligent in his technical performance of the procedure. As such, it is entirely possible that the ABI records never even crossed Dr. Llobet's mind before February 2016. And even if they did, we would not fault him for concluding that they were completely irrelevant to this litigation. If he had any inkling that the records were relevant, surely he would have produced them, since they are favorable to him.

[20] Gutierrez notes that the discovery deadline has passed and asserts that he is therefore unable to explore the ABI testing "through deposition and other discovery methods." Appellee's Br. p. 35-36. As a result, he argues, he would suffer "extreme prejudice" if the ABI records are not excluded. *Id.* at 35. Under

the circumstances, we cannot agree. When Dr. Llobet indicated his intent to pursue this interlocutory appeal, the trial court vacated the May 2016 trial date and stayed all proceedings. We trust that when this matter returns to the trial court, Gutierrez will be afforded the opportunity to conduct necessary discovery regarding the ABI records, including supplemental depositions of Dr. Llobet and Dr. Steen.

[21]  Affirmed in part and reversed in part.

Bradford, J., and Brown, J., concur.