

FILED

Feb 22 2017, 9:51 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Christopher S. Roberge
Elizabeth A. Roberge
Alexandra N. Gortchilova
RobergeLaw
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Stacy F. Thompson
Adam R. Doerr
Clendening Johnson & Bohrer, P.C.
Bloomington, Indiana

ATTORNEY FOR AMICUS CURIAE

INDIANA TRIAL LAWYERS
ASSOCIATION

Jerry Garau
Garau Germano, P.C.
Indianapolis, Indiana

ATTORNEYS FOR AMICUS
CURIAE

DEFENSE TRIAL COUNSEL OF
INDIANA

Donald B. Kite, Sr.
Wuertz Law Office, LLC
Indianapolis, Indiana

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| C.S., a Minor Child, by Her Next Friends and Parents, John Stevens and Laura Stevens, | February 22, 2017 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 53A01-1607-CT-1657 |
| v. | Appeal from the Monroe Circuit Court |
| Aegis Women's Healthcare, P.C., Brian W. Cook, M.D., | The Honorable E. Michael Hoff, Judge |
| | Trial Court Cause No. 53C01-1506-CT-1134 |

Rhonda S. Trippel, M.D., and
Lillette (Alice B.) Wood, M.D.,

*Appellees-Defendants*

**Vaidik, Chief Judge.**

# Case Summary

[1]     With limited exceptions, a medical-malpractice plaintiff cannot take her case to
        court until she has submitted a proposed complaint to the Indiana Department
        of Insurance and received an opinion from a panel of doctors (a "medical
        review panel"). Once she has made it through the panel process and into court,
        however, the plaintiff can present any theory of malpractice that (1) was
        encompassed by the proposed complaint that was before the panel and (2) is
        related to evidence that was submitted to the panel. *McKeen v. Turner*, 61
        N.E.3d 1251 (Ind. Ct. App. 2016), *trans. pending*.

[2]     In the case before us, John and Laura Stevens filed a proposed complaint
        against Aegis Women's Healthcare, P.C. and several of its doctors (collectively,
        "Aegis") after their daughter was born, via emergency c-section, with various
        health problems. The medical review panel issued an opinion in favor of Aegis,
        and the Stevenses have now taken their case to court, where their specific

theory of malpractice is that Aegis waited too long to perform the c-section. The parties agree that this theory fell within the broad allegations in the Stevenses' proposed complaint but dispute whether there was evidence relating to the theory submitted to the panel. Finding that there was, we reverse the trial court's grant of summary judgment to Aegis.

# Facts and Procedural History

[3] Laura Stevens became a patient of Aegis Women's Healthcare, P.C. in the 1990s and was still being seen there when she became pregnant with a daughter, C.S., in the summer of 2010. There were several risk factors associated with the pregnancy, including Laura's age (forty), her Rh-negative status,[1] her history of miscarriages, and, eventually, marginal insertion of the placental cord. At some point before 10:00 a.m. on April 13, 2011, two days before her due date, Laura called Aegis to report that she had not felt the baby moving overnight and had felt only "diminished" movement that morning. Aegis directed her to come to its office for a non-stress test ("NST"). Aegis made a Triage Note about this call. Appellants' App. Vol. II p. 132. The NST generated "tracing" strips, and the results were reported on Aegis' Prenatal Flowsheet as follows: "non reactive, no response to vibroacoustic stim[ulation]

---

[1] A mother's Rh-negative status presents a risk of antibodies from the mother passing through the placenta and destroying the baby's red blood cells, or "hemolytic disease of the newborn." *See* "Hemolytic disease of the newborn," available at https://medlineplus.gov/ency/article/001298.htm (last visited February 16, 2017).

and decel[eration] with contraction." *Id*. at 127. The NST prompted Aegis to send Laura to IU Health Bloomington Hospital for continued monitoring. Laura was admitted to the hospital at 11:57 a.m.

[4] The OB Flowsheet from the hospital indicates that Laura was "admitted from ob office for [complaints of] decreased fetal movement and [fetal-heart-rate] deceleration on tracing in office" and that Aegis doctors continued to monitor C.S.'s heart rate, which generated additional "tracing" strips. *Id*. at 167. Notes on the OB Flowsheet show that C.S.'s heart rate was "undulating" and that an "urgent" c-section was called at 1:33 p.m. *Id*. at 165-170. C.S. was delivered forty minutes later, at 2:13 p.m. C.S. was born alive but with significant health issues; among other things, she had suffered a fetomaternal hemorrhage (some of her blood had passed to her mother before or during delivery).

[5] In April 2013, Laura and her husband John filed a proposed complaint for medical malpractice against Aegis with the Indiana Department of Insurance. The Stevenses detailed the risks associated with the pregnancy, the care Aegis provided to Laura in the days and weeks leading up to the day of the c-section, including Aegis' management of Laura's Rh-negative status, and the health problems suffered by C.S. *Id*. at 54-59. Regarding the hours that immediately preceded the c-section, the Stevenses noted that Laura "was seen at Aegis," that Aegis sent Laura to the hospital for further monitoring, and that, at the hospital, "several worrisome signs were immediately observed and an emergency caesarian section was performed." *Id*. at 57. They also alleged more generally that Aegis "failed to adequately monitor Laura's pregnancy and [C.S.'s]

condition" and "failed to provide appropriate medical care and treatment to Laura and [C.S.]" *Id.* at 58.

[6] A medical review panel was formed, and the parties submitted numerous medical records, including the Aegis Triage Note, the Aegis Prenatal Flowsheet, and the OB Flowsheet from the hospital. However, the NST and fetal-heart-rate tracings themselves were not submitted, and the panel did not ask the parties to submit them. In addition to medical records, the Stevenses submitted a narrative statement that focused, as their proposed complaint had, on Laura's Rh-negative status and the other risks inherent in her pregnancy. They did not argue that Aegis waited too long to perform the c-section. In March 2015, the panel issued a unanimous opinion that "[t]he evidence does not support the conclusion that the Defendants failed to meet the applicable standard of care as charged in the complaint." *Id.* at 60-63.

[7] Three months later, the Stevenses sued Aegis in Monroe Circuit Court. Their complaint is substantially similar to their proposed complaint, including the allegation that Aegis "failed to adequately monitor Laura's pregnancy and C.S.'s condition" in light of risks associated with the pregnancy. *Id.* at 37. Aegis promptly moved for summary judgment based on the medical review panel's opinion.

[8] In support of their opposition to Aegis' motion, the Stevenses filed an affidavit from Dr. James Jarrett. Dr. Jarrett noted that he had reviewed the medical records from the day of C.S.'s birth, including the NST and fetal-heart-rate

tracings. He concluded that the medical records, particularly the tracings, revealed that C.S. had been in "significant distress"; that Aegis should have recognized this distress and performed the c-section sooner; and that Aegis breached the standard of care by failing to do so. *Id.* at 191-96. In reply, Aegis argued that summary judgment was still appropriate because the Stevenses were raising a theory of malpractice that was not specifically articulated to the medical review panel, based on evidence—the tracings—that was not submitted to the panel.

[9] After holding a hearing, the trial court issued an order granting Aegis' motion for summary judgment. The court concluded that the Stevenses' submission to the medical review panel "did not claim that the Defendants breached the duty of care in their timing of the caesarian section performed on Ms. Stevens, nor did they provide any information to the panel that could have supported such a claim." *Id.* at 15.

[10] The Stevenses now appeal.

# Discussion and Decision

[11] The Stevenses ask us to reverse the trial court's ruling that they did not present their "delayed-c-section" theory to the medical review panel and that they are therefore barred from presenting it in court. On appeal from a grant of summary judgment, we address the issues de novo, giving no deference to the

trial court's decision. *Rogers Group, Inc. v. Tippecanoe Cty.*, 52 N.E.3d 848, 850 (Ind. Ct. App. 2016), *trans. denied*.

[12] The Stevenses rely on *Miller v. Memorial Hospital of South Bend, Inc.*, 679 N.E.2d 1329 (Ind. 1997), and our recent decision in *McKeen v. Turner*, 61 N.E.3d 1251. In *Miller*, our Supreme Court rejected the argument that a medical-malpractice plaintiff's action "is restricted by the substance of the submissions presented to the medical review panel," explaining:

> Pursuant to the [Indiana Medical Malpractice Act], the panel was authorized to review the medical records and other submitted material pertaining to each defendant's treatment of Nicholas. While a medical malpractice plaintiff must, as a prerequisite to filing suit, present the proposed complaint for review and expert opinion by a medical review panel, there is no requirement for such plaintiff to fully explicate and provide the particulars or legal contentions regarding the claim.

679 N.E.2d at 1332. In *McKeen*, we relied on *Miller*, as well as the language of the Medical Malpractice Act, in holding that a medical-malpractice plaintiff who has made it through the medical-review-panel process and into court can pursue a theory of malpractice if (1) the theory was encompassed, under the liberal rules of notice pleading, by the proposed complaint that was before the panel and (2) evidence relating to the theory was submitted to the panel. 61 N.E.3d at 1261.

[13] The Stevenses argue that their "delayed-c-section" theory satisfies the requirements of *McKeen*. Aegis does not dispute the applicability of *McKeen*,

nor does it dispute that the first of the two *McKeen* requirements was satisfied in this case, i.e., that Stevenses' "delayed-c-section" theory was encompassed by the general allegations contained in their proposed complaint.[2] However, focusing on the fact that the tracings from the NST at Aegis and from the fetal-heart-rate monitoring at the hospital were not submitted to the medical review panel, Aegis asserts that "the Stevens family did not provide evidence supporting their claim that C.S.'s delivery was unduly delayed to the medical review panel[.]" Appellees' Br. p. 16. We disagree.

[14] There is no question that the NST and fetal-heart-rate tracings are highly relevant to the Stevenses' "delayed-c-section" theory. However, it is equally clear that the panel had before it other significant evidence that supports the theory, including records specifically addressing the NST and the fetal-heart-rate monitoring. The panel had: (1) the Aegis Triage Note indicating that Laura called Aegis at some point before 10:00 a.m. to report that she had not felt any fetal movement overnight and had felt only "diminished" movement that morning; (2) the Aegis Prenatal Flowsheet indicating that an NST was conducted because of the decreased fetal movement, that the test was "non reactive," and that there was "no response to vibroacoustic stim[ulation] and decel[eration] with contraction"; (3) the OB Flowsheet from the hospital

---

[2] A petition to transfer is pending in *McKeen*, but Aegis does not argue that it was wrongly decided. In another case we decide today, the defendant did make that argument, which we reject. *See Llobet v. Gutierrez*, No. 45A04-1605-CT-01133 (Ind. Ct. App. Feb. 22, 2017). We also note that we did not hand down *McKeen* until six months after the trial court made its decision in this case.

indicating that Laura was admitted at 11:57 a.m. "from ob office for [complaints of] decreased fetal movement and [fetal-heart-rate] deceleration on tracing in office," that continued monitoring showed that C.S.'s heart rate was "undulating," that Aegis doctors were reviewing the fetal-heart-rate "tracing," and that an "urgent" c-section was called at 1:33 p.m.; and (4) evidence that C.S. was not delivered until forty minutes later, at 2:13 p.m.

[15] While Aegis' emphasis on the NST and fetal-heart-rate tracings is understandable, we simply cannot agree with its assertion that, without them, the medical review panel "did not have the opportunity to evaluate the timeliness of C.S.'s delivery." Appellees' Br. p. 20. The evidence that the panel **did have** put it on notice not only that the NST and the fetal-heart-rate monitoring had been conducted but also that the results of both were abnormal and that there were "tracings" associated with each. And to the extent that the panel was incapable of fully evaluating the timeliness of the c-section without the tracings themselves, we simply note that it had a right to request them. *See* Ind. Code § 34-18-10-21(a) ("The panel has the right and duty to request all necessary information.").

[16] Because evidence relating to the "delayed-c-section" theory was submitted to the medical review panel, and because the proposed complaint encompassed that theory, the Stevenses are entitled to present it in court. *See McKeen*, 61 N.E.3d at 1261. Therefore, we reverse the trial court's grant of summary judgment in favor of Aegis.

Reversed.

Bradford, J., and Brown, J., concur.